RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0080p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

　　　　　　*Plaintiff-Appellee,*

　　　　*v.*

BILLY ROLAND PHILLIPS,

　　　　　　*Defendant-Appellant.*

No. 06-6191

>

---

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 05-00066—Karen K. Caldwell, District Judge.

Submitted: September 17, 2007

Decided and Filed: February 19, 2008

Before: MOORE and GRIFFIN, Circuit Judges; GRAHAM, District Judge.[*]

---

**COUNSEL**

**ON BRIEF:** Stephan Charles, STEPHAN CHARLES, COUNSELLOR OF LAW, Manchester, Kentucky, for Appellant. Charles P. Wisdom, Jr., John Patrick Grant, ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky, for Appellee.

　　　　GRIFFIN, J., delivered the opinion of the court, in which GRAHAM, D. J., joined. MOORE, J. (p. 10), delivered a separate opinion concurring in part and concurring in the judgment.

---

**OPINION**

---

　　　　GRIFFIN, Circuit Judge. Defendant Billy Roland Phillips pleaded guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and was sentenced to a term of 30 months of incarceration. Phillips appeals his sentence, arguing that the district court engaged in impermissible fact-finding at sentencing in contravention of the Sixth Amendment, the district court erred in finding that firearms possessed by Phillips constituted relevant conduct under U.S.S.G. § 1B1.3, and his sentence is procedurally unreasonable. We disagree and affirm.

---

[*] The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

I.

On August 20, 2002, a special agent with the Bureau of Alcohol, Tobacco, and Firearms ("ATF") was informed by a Kentucky State Police ("KSP") detective that Billy Phillips, a convicted felon who had lost the right to possess firearms, had been involved in a shooting incident on August 3, 2002, with Harold Wayne Collins near Manchester, Kentucky.[1] When questioned about the incident, Phillips stated that he was traveling east on the highway when he observed Collins make an obscene gesture towards him. Phillips then traveled back to the parking lot to determine who was accompanying Collins, when, according to Phillips, several individuals shot at him. Phillips reported being struck in the back twice by bullet fragments, but did not suffer any serious injuries.

A search of Phillips's vehicle revealed two loaded handguns – a .45 caliber pistol and a nine millimeter pistol – in a briefcase located in the passenger compartment. Officers also discovered a rifle in the trunk. The ATF agent conducted a firearms trace on the nine millimeter pistol and learned that it had been stolen from its rightful owner in Bloomington, Indiana, who informed the agent that the pistol had been taken from his vehicle in 1996. The ATF agent obtained a report from the Indianapolis Police Department to verify the theft. Ultimately, however, Phillips was not charged for possessing any of these firearms, including the stolen nine millimeter.[2]

Two years later, on May 9, 2004, Phillips was stopped by a Kentucky Vehicle Enforcement ("KVE") officer while being observed operating his vehicle with broken brake lights. The officer noticed an open can of beer in the vehicle's cup holder and detected a strong odor of alcohol emitting from Phillips. The officer administered a portable Breathalyzer test, which determined Phillips's blood alcohol level to be .163. A second officer who had arrived on the scene to render assistance then arrested Phillips for driving under the influence of intoxicants. The first officer conducted a search of Phillips's vehicle and discovered several firearms behind the passenger seat. After securing a search warrant for the vehicle, a later search of the vehicle uncovered a loaded .22 caliber pistol, a loaded 7.62 x 39 millimeter rifle, a loaded .45 caliber pistol, a loaded 12 gauge pump action shotgun, and various ammunition. Thereafter, Phillips was indicted in connection with this incident for being a felon in possession of four firearms, in violation of 18 U.S.C. § 922(g)(1). Phillips later pleaded guilty to the indictment. His sentence for this conviction is the subject of the present appeal.

On March 9, 2006, an ATF agent and KSP officer received a tip that Phillips was acting as a bodyguard for someone staying at the Best Western hotel in Manchester. The agent and officer traveled to the hotel, met with Phillips, and asked him in what room he was staying. Phillips informed the police that he was staying in room 105, although the inscription on his hotel key read 103. The officers then knocked on the door to room 105 and received permission to enter. The room's guest then pushed open the door that connected rooms 105 and 103, and the ATF agent observed a silver pistol lying on a table. After the ATF agent obtained a federal search warrant for room 103, a search led to the seizure of a loaded .45 caliber pistol and various rounds of ammunition.

---

[1] In 1982, Phillips pleaded guilty in federal court to the felony offense of possessing and concealing counterfeit United States obligations, and was sentenced to three years of incarceration. That same year, Phillips also pleaded guilty in Kentucky state court to the felony offense of receiving stolen property and was sentenced to a term of five years of imprisonment.

[2] Apparently, Phillips was not charged in connection with this incident because he claimed that he carried the firearms in self-defense. Phillips believes – and the government does not dispute – that several attempts have been made on his life and that a Kentucky resident, Jennings White, has offered a $25,000 contract to have Phillips killed. This belief is significant because it explains Phillips's repeated illegal possession of firearms.

Phillips entered into a plea agreement regarding his May 9, 2004, arrest. The district court conducted a sentencing hearing and, over Phillips's objections, found that Phillips's illegal possessions of firearms in August 2002 and March 2006, were "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2). Phillips was therefore deserving of a four-point increase to his base offense level under the United States Sentencing Guidelines. The court found further that an additional two-point enhancement was warranted because one of the firearms – the nine millimeter pistol seized in August 2002 – was stolen. The court then sentenced Phillips to a term of 30 months of incarceration. This timely appeal followed.

## II.

Under the advisory Guidelines scheme, we review a criminal defendant's sentence for reasonableness. *United States v. Lancaster*, 501 F.3d 673, 675 (6th Cir. 2007). In conducting reasonableness review, we "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. —, No. 06-7949, Slip Op. at 12 (Dec. 10, 2007). Phillips contends that the district court improperly calculated his Guidelines range by incorrectly finding his illegal possession of firearms on August 3, 2002, and March 9, 2006, to be "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2), thus resulting in a four-point increase of his base offense level under the Guidelines.[3] The government argues that Phillips's repeated possessions of the firearms were connected by a common purpose – his desire to protect himself from attempts on his life – and that his 2002 and 2006 possessions of firearms were part of the "same course of conduct" as his charged 2004 possession of firearms. We agree with the government.

We accept factual findings made by the district court at sentencing unless they are clearly erroneous. 18 U.S.C. § 3742(e). Because the district court's determination of "relevant conduct" under the Sentencing Guidelines involves the application of law to fact, we review the district court's determination de novo. *United States v. Shafer*, 199 F.3d 826, 830 (6th Cir. 1999). The government bears the burden of proof, by a preponderance of the evidence, that Phillips's possessions of firearms in 2002 and 2006 were relevant conduct. *United States v. Moored*, 997 F.2d 139, 144 (6th Cir. 1993).

Phillips's 2002 and 2006 possessions of firearms may be added to his offense level as relevant conduct if these possessions were "part of the same course of conduct or common scheme or plan" as Phillips's underlying felon-in-possession conviction.[4] U.S.S.G. § 1B1.3(a)(2). "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3, application note 9(A). If this criteria is not met, Phillips's prior possessions of firearms may nevertheless be counted as relevant conduct if they were part of the same course of conduct. "Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct

---

[3]Although Phillips challenges the district court's ability to engage in fact-finding, *see* discussion, *infra*, and its determination that his illegal possession of firearms on August 3, 2002, was relevant conduct, he does not challenge the specific finding that the nine millimeter pistol was stolen.

[4]That Phillips's 2006 charge for possessing firearms as a felon was dismissed pursuant to his plea agreement does not preclude it from being offered as relevant conduct at sentencing. "[I]t is well settled in this circuit that conduct forming the basis for counts dismissed pursuant to a plea agreement may be considered in determining a defendant's base offense level under the Sentencing Guidelines." *United States v. Hill*, 79 F.3d 1477, 1481 (6th Cir. 1996).

if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3, application note 9(B).

We consider the degree of similarity of the offenses, the regularity of the offenses, and the time interval between the offenses to assist us in determining whether offenses are sufficiently connected to be considered part of the same course of conduct. *Id.* The Guidelines counsel a "sliding scale approach" to these factors, explaining that "[w]hen one of the above factors is absent, a stronger presence of at least one of the other factors is required." *Id.*; *see also Hill*, 79 F.3d at 1482 (describing Guidelines commentary as requiring a "sliding scale approach").

Although there is no previous published opinion from our circuit addressing this issue, our sister circuits have held that "the contemporaneous, or nearly contemporaneous, possession of uncharged firearms is . . . relevant conduct in the context of a felon-in-possession prosecution." *United States v. Powell*, 50 F.3d 94, 104 (1st Cir. 1995); *see also United States v. Gales*, 137 F. App'x 875, 877-78 (6th Cir. 2005) (unpublished) (upholding application of two-point enhancement for relevant conduct where defendant was convicted under 18 U.S.C. § 922(g) and was found to have possessed two other firearms within two months from charged conduct). These opinions have not set forth any bright line rule regarding the temporal scope of "relevant conduct," but have generally upheld the relevant conduct designation where the offenses were within a nine-month period. *See, e.g., United States v. Nichols*, 464 F.3d 1117, 1124 (9th Cir. 2006) (upholding relevant conduct enhancement where defendant possessed firearms contemporaneously with his offense of conviction and admitted that he regularly possessed stolen weapons); *United States v. Brummett*, 355 F.3d 343, 345 (5th Cir. 2003) (upholding relevant conduct enhancement for possession of four firearms on three separate occasions within a nine-month period); *United States v. Wallace*, 280 F.3d 781, 785 (7th Cir. 2002) (possession of firearms four weeks apart from underlying offense); *United States v. Santoro*, 159 F.3d 318, 321 (7th Cir. 1998) (possession of uncharged assault rifle along with two other weapons within a six- to nine-month period); *United States v. Windle*, 74 F.3d 997, 1000-01 (10th Cir. 1996) (possession of illegal firearms over four- to five-month period sufficient to constitute "same course of conduct"). *See also United States v. Griggs*, No. 05-4581, 2007 U.S. App. LEXIS 18115 (4th Cir. July 30, 2007) (unpublished) (upholding relevant conduct enhancement for defendant's possession of "more than seventy firearms" within a four-month period).

We have addressed the applicability of the relevant conduct enhancement most commonly in the drug context. In *Hill*, 79 F.3d at 1484-85, we concluded that an isolated drug transaction nineteen months before the transaction for which the defendant was indicted could not be considered relevant conduct. Applying the factors identified in application note 9 to U.S.S.G. § 1B1.3, we first noted that "temporal proximity is extremely weak in that nineteen months is an exceedingly long lapse between offenses." *Id.* at 1484. We next observed that the "regularity" factor was "completely absent . . . for the government proved only one prior offense." Under § 1B1.3's sliding scale approach, the government was then "required to compensate for the weakness of the temporal and regularity factors by presenting substantially stronger proof of similarity." *Id.* We ultimately held that the government's proof of similarity – that the same type of drug was sold during both transactions – was insufficient to demonstrate "relevant conduct." *Id.*

In contrast, in *United States v. Gilbert*, 173 F.3d 974 (6th Cir. 1999), we upheld the district court's determination that the defendant's possession of crack cocaine in February of 1993 and December of 1994 qualified as relevant conduct in relation to an August 7, 1996, arrest for distributing crack cocaine. We distinguished *Hill* on the grounds that "there was strong evidence that the earlier transactions were part of the same continuous course of conduct as was the offense charged in the indictment." *Gilbert*, 173 F.3d at 978. We observed that "the transactions all involved the same gang, the same type of drug, the same general location, and the same modus operandi." *Id.*

Applying these authorities, and the factors identified in application note 9 to U.S.S.G. § 1B1.3, we hold that the district court properly attributed Phillips's possession of firearms in 2002 and 2006 as relevant conduct. Phillips argues that this case is analogous to *Hill*, but there are two significant differences present here that apply to the § 1B1.3 factors and distinguish this case from *Hill*. First, the degree of regularity is stronger here than in *Hill*, where the sole other offense considered "relevant conduct" was an isolated drug transaction nineteen months prior to the offense of conviction. In the present case, there are two incidents – in addition to the charged conduct – that are identical to the offense of conviction. Moreover, one of these incidents occurred after Phillips was arrested and indicted in connection with the offense of conviction, which suggests that his arrest for being a felon in possession did not deter him from possessing firearms and that he may have carried firearms regularly.

Second, the degree of similarity is stronger. The relevant conduct – illegally possessing firearms as a felon – is identical to the offense of conviction. More importantly, Phillips's repeated possession of firearms appears linked by a common purpose: self-defense.[5] In his sentencing memorandum, Phillips recounted the attempts on his life and suggested that a shorter sentence was appropriate because he carried firearms in self-defense. At the sentencing hearing, he explained why he had possessed firearms illegally:

> I knew it was unlawful for me to possess those guns, but I felt that it was essential to my life and my mother's life that I have those guns. The attempts that were made on my life, the bullets that were fired into my home with my mother in it, I felt I had to have those guns to stay alive and keep my mother alive.

Phillips's self-defense explanation indicates that each incident of illegal firearm possession is connected by the common purpose of self-defense and suggests that he habitually carried firearms. *Contra Hill*, 79 F.3d at 1485 (observing that government had not "suggested any reason to explain the lapse between the first [drug] transaction and the second, except to imply that Hill must have been selling drugs to support himself during this period and simply did not get caught. We rejected that implication above, because the government pointed to no evidentiary support.").

Although there is a significant time lapse between offenses, because there is substantial similarity between the offending incidents and because Phillips has indicated that he carried firearms regularly, we hold that the district court did not err in finding that his 2002 and 2006 possessions of firearms were part of the "same course of conduct" as his 2004 felon-in-possession charge and in applying these instances of relevant conduct to his base offense level.

---

[5] In application note 9 to § 1B1.3, "common purpose" is listed as a factor to show a "common scheme or plan" under note 9(A), rather than as a factor to show "same course of conduct" under note 9(B). Nevertheless, as we explained in *Hill*, "there is considerable overlap" between the terms "common scheme or plan" and "same course of conduct." *Hill*, 79 F.3d at 1483. Thus, "the same factors listed as supporting a finding of a 'common scheme or plan,' which include common victims, common offenders, *common purpose*, or similar modus operandi, may also bolster the similarity factor in analyzing whether a prior offense is part of the 'same course of conduct' as the offense of conviction." *Id.* (emphasis added). Indeed, "it is difficult to conceive of other factors that could be used to support a finding that two offenses were similar." *Id.*

III.

Next, Phillips argues that the district court violated his Sixth Amendment rights when it engaged in judicial fact-finding concerning his relevant conduct. Phillips contends that such fact-finding is inconsistent with *United States v. Booker*, 543 U.S. 220 (2005). Phillips's argument is foreclosed by our post-*Booker* jurisprudence and therefore lacks merit.

We have held repeatedly that *Booker* and its precursor, *Apprendi v. New Jersey*, 530 U.S. 466 (2000), did not eliminate judicial fact-finding during sentencing. Rather, district courts must "calculate the Guideline range as they would have done prior to *Booker*, but then sentence defendants by taking into account all of the relevant factors of 18 U.S.C. § 3553, as well as the Guidelines range." *United States v. Stone*, 432 F.3d 651, 655 (6th Cir. 2005); *see also United States v. Mickens*, 453 F.3d 668, 673 (6th Cir. 2006). Moreover, *Apprendi* is not triggered so long as the judicial findings of fact do not result in the defendant receiving a sentence that exceeds the statutory maximum. *United States v. Hough*, 276 F.3d 884, 890 (6th Cir. 2002); *United States v. Schulte*, 264 F.3d 656, 660 (6th Cir. 2001); *see also United States v. Woods*, 39 F. App'x 72, 75 (6th Cir. 2002) (unpublished) ("This court has declined to require that enhancements imposed pursuant to the Guidelines be found by a jury beyond a reasonable doubt as long as the sentence imposed does not exceed the statutory maximum.").

Phillips acknowledges that his argument has been rejected by our court in prior opinions, but contends that the "reasoning of other decisions by this Court that judicial fact-finding is permissible in applying the Sentencing Guidelines because the Guidelines are no longer mandatory is both circuitous and illusory." Phillips, however, fails to cite any intervening Supreme Court or en banc decision from this circuit that is inconsistent with this court's post-*Booker* jurisprudence, and this court is bound by its prior opinions in *Stone* and *Mickens*. *See Cmtys. for Equity v. Mich. High Sch. Ath. Ass'n*, 459 F.3d 676, 689 (6th Cir. 2006) ("Unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision," the court is bound by its prior opinions) (internal citation and quotation omitted). Thus, the district court acted properly in making findings of fact at Phillips's sentencing hearing. *See United States v. Moncivais*, 492 F.3d 652, 665 (6th Cir. 2007); *see also United States v. Flores*, 477 F.3d 431, 438-39 (6th Cir. 2007) (remanding for resentencing because, inter alia, the district court erroneously believed it was prohibited from judicial fact-finding).

IV.

Finally, Phillips asserts that his sentence is procedurally unreasonable. He contends that the district court failed to consider the factors listed in 18 U.S.C. § 3553 and did not articulate its

reasons for rejecting Phillips's arguments for a lower sentence.[6]  Again, we disagree and affirm Phillips's sentence.

As an initial matter, we review the procedural reasonableness of Phillips's sentence for plain error.  In *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), we instructed district courts, after announcing a proposed sentence, to "ask the parties whether they have any objections to the sentence . . . that have not previously been raised." *Id.* at 872.  If a party failed to raise an objection after being asked this question, we held that plain-error review applies on appeal to any arguments not preserved. *Id.*  Our recent en banc opinion in *United States v. Vonner*, No. 05-5295, — F.3d —, 2008 WL 320773 (6th Cir. Feb. 7, 2008) (en banc), makes clear that the *Bostic* rule applies to post-*Booker* procedural reasonableness challenges. *See Vonner*, 2008 WL 320773 at *3 (holding that plain-error review applied to appellant's procedural reasonableness argument where defendant answered "No" to district court's *Bostic* question at sentencing, and explaining that although "this answer did not undermine Vonner's right to appeal issues he had 'previously raised,' it did undermine his right to challenge the adequacy of the court's explanation for the sentence – an issue that became apparent as soon as the court finished announcing its proposed sentence and that counsel nonetheless declined the court's invitation to address").

Here, after the district court announced a proposed sentence of thirty months of incarceration and explained its reasons for doing so, the court asked the parties, "[h]aving noted all of the previous objections . . . is there any other legal objection that sentence should not be imposed as stated?" "No, your Honor, " Phillips's counsel replied.  Phillips's failure to preserve a challenge to the procedural reasonableness of his sentence accordingly requires us to apply plain-error review.  Thus, for us to reverse Phillips's sentence as unreasonable, Phillips must show "(1) error (2) that was obvious or clear (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Vonner*, 2008 WL 320773 at *3 (internal quotations omitted).  This is a heavy burden for Phillips to bear, for "the plain error doctrine is to be used sparingly, only in exceptional circumstances, and solely to avoid a miscarriage of justice." *United States v. Cox*, 957 F.2d 264, 267 (6th Cir. 1992).

Before the district court, Phillips disputed the district court's relevant conduct application to his base offense level and sought a split sentence of ten months, five of which he would serve in

---

[6]Title 18 U.S.C. § 3553 requires a district court to consider the following factors:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed –
(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)     to afford adequate deterrence to criminal conduct;
(C)     to protect the public from further crimes of the defendant; and
(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

* * *

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(2)-(3), (6), (7).

prison, and five served on supervised home arrest. He based this request on two reasons: his alleged need to carry the firearms in self-defense and the poor health of his elderly mother, with whom he lived. On appeal, Phillips cites *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006), for the proposition that "[w]here a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it" and argues that the district court failed to articulate its reasons for rejecting his request for a shorter sentence. We disagree.

In announcing Phillips's sentence, the court stated:

[P]ursuant to the Sentencing Reform Act of 1984, as amended or modified by the Supreme Court's decision on January the 12th, 2005, in *United States v. Booker* and *Fanfan*, it is the judgment of this Court that the defendant Billy Roland Phillips, is hereby committed to the custody of the Bureau of Prisons for a term of 30 months.

The Court contemplated exceeding the guidelines in this case. This defendant, even though threats had been made against his life, subsequently became employed as a private investigator. And even though he's been shot at, he's never backed down from a fight or removed himself from the situation. In fact, since he has known that contracts have been taken out on his own life, he has actually engaged in protecting others from threats on their lives. This suggests to the Court that this defendant is as much an aggressor as a victim in this case.

However, when the Court considers that it has already held this defendant accountable for seven guns, or for a larger number of guns in terms of relevant conduct, the Court finds that a guideline sentence is appropriate in this case, that it addresses the nature and circumstances of the offense, that it promotes respect for the law and affords adequate deterrence for this particular criminal conduct.

In the second paragraph of the above statement, the district court clearly rejected Phillips's self-defense argument, pointing out that Phillips has not made any attempt to avoid confrontation and, by working as a bodyguard, has put other people at risk by bringing them into close contact with him. Although the court did not specifically respond to Phillips's claim concerning the health of his mother, its statement that it "contemplated exceeding the guidelines in this case" and that Phillips "is as much an aggressor as a victim in this case," indicated that the court found Phillips to be too dangerous to allow in public after serving only five months in prison. Moreover, the court agreed to recommend that Phillips serve his sentence in his hometown of Manchester, near his mother, which indicates that it considered Phillips's concern for his mother's health and "the kinds of sentences available" at its disposal. 18 U.S.C. § 3553(a)(3); *see also United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006) (noting that recommendation for defendant to serve sentence close to home showed that district court took into account "the kinds of sentences available"). *See also Vonner*, 2008 WL 320773 at *5 (observing that, although FED. R. CRIM. P. 32 requires the sentencing court to *rule* on any controverted matter, the Rule does not require the court to "give a lengthy explanation for its ruling," and holding that the district court's rejection of defendant's request for a shorter sentence constituted a sufficient ruling).

Phillips also suggests that the district court did not adequately consider the § 3553(a) factors. Although the review of specific § 3553(a) factors undoubtedly facilitates appellate review, "this court has never required 'the ritual incantation' of the factors to affirm a sentence." *United States v. Williams*, 436 F.3d 706, 709 (6th Cir. 2006). Moreover, as the Supreme Court's opinion in *Rita v. United States*, 551 U.S. —, 127 S. Ct. 2456 (June 21, 2007), makes clear, where – as here – the district court is applying a Guidelines sentence, a detailed explanation of the § 3553(a) factors may be unnecessary:

> The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority. *See, e.g., United States v. Taylor*, 487 U.S. 326, 336-337 (1988). Nonetheless, when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation. Circumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case, and that the judge has found that the case before him is typical. Unless a party contests the Guidelines sentence generally under § 3553(a) – that is argues that the Guidelines reflect an unsound judgment, or, for example, that they do not generally treat certain defendant characteristics in the proper way – or argues for departure, the judge normally need say no more.

*Rita*, 127 S. Ct. at 2468.

Here, the district court discussed the "history and characteristics of the defendant," observing that Phillips has been an "aggressor" in his confrontations with others and that he has "never backed down from a fight or removed himself from the situation" when confronted. *See* 18 U.S.C. § 3553(a)(1). The court concluded further that Phillips's sentence at the high end of the applicable Guidelines range was appropriate because it "addresses the nature and circumstances of the offense, that it promotes respect for the law and affords adequate deterrence for this particular criminal conduct." *See* 18 U.S.C. § 3553(a)(2)(A)-(B). This discussion does not amount to plain error.

Because the district court adequately considered the § 3553(a) factors and explained why it was sentencing Phillips at the high end of the Guidelines range, we conclude that the district court did not plainly err and that Phillips's sentence is procedurally reasonable.

V.

For these reasons, we affirm.

---

**CONCURRING IN PART AND CONCURRING IN THE JUDGMENT**

---

KAREN NELSON MOORE, Circuit Judge, concurring in part and concurring in the judgment. I join in Parts I and II of the majority opinion. I concur in only the judgment in Parts III and IV. Bound as I am by the majority opinion in *United States v. Vonner*, No. 05-5295, --- F.3d --- (6th Cir. 2008) (en banc), I concur in the judgment that the district court did not commit plain error and that the sentence therefore was not procedurally unreasonable.